**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Alyssa Burns, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Kimberly-Clark Corporation,<br><br>Defendant. | Case No. 1:25-cv-1662 (MAD/PJE)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Alyssa Burns (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action concerns Defendant Kimberly-Clark Corporation's deceptive marketing and sale of its Huggies Little Movers disposable diapers (the "Product[1]").

2. Defendant markets the Product as being "hypoallergenic." An image of the Product packaging appears below:

[1] The term Product includes all sizes and product packaging.




3. Within the past year, unbeknownst to consumers, Defendant materially altered the composition or construction of the Product.

4. Yet, Defendant continues to market the Product as "hypoallergenic" and maintains packaging that suggested continuity with prior versions of the diapers.

5. The term "hypoallergenic" is a powerful, premium-driving label—especially for parents of infants. It conveys that the Product contains fewer irritants, fewer chemicals, and fewer substances known to cause reactions.

6. However, following the secret reformulation of the Product, scores of consumers are reporting that the Product no longer performs like a hypoallergenic diaper.

7. Parents reported unusually strong, sudden, and severe skin reactions including rashes and chemical burns which are inconsistent with what any reasonable consumer would expect from any diaper, let alone a Product marketed as hypoallergenic.

8. Consumers reasonably expect that a diaper marketed as hypoallergenic will remain consistent in its formulation unless the manufacturer clearly communicates a change. This expectation is particularly strong for parents who have used the Product for months or years without incident.

9. The Product is a recurring-purchase item, and consumers rely on the stability of the formulation when deciding to repurchase the same product.

10. By branding its Product as "hypoallergenic," Defendant misrepresents the nature of the Product and extracts a price premium from consumers.

11. Even in the absence of the "hypoallergenic" representation, Defendant deceives consumers by failing to advise them that the Product has a tendency to cause severe skin reactions in babies.

12. Had Plaintiff and the Class known the true nature of the Product, they would not have purchased it or would have only been willing to pay a significantly lower price for it.

13. Defendant's conduct violates New York's consumer protection statutes. Plaintiff brings this action to seek monetary damages on behalf of herself and a nationwide class of similarly situated consumers.

## FACTUAL BACKGROUND

14. Defendant prominently labels its Product with the term "hypoallergenic," on the front of the product packaging. This label is unqualified and does not direct the consumer to any disclaimer, warning, or explanatory information elsewhere on the packaging.




15. Throughout the Class Period, Defendant maintained the same packaging, the same "hypoallergenic" representation, and the same overall marketing presentation. Nothing on the Product signaled to consumers that any change in formulation had occurred. Nor did Defendant warn that the internal lining, materials, or other components had been altered in a manner that could affect the Product's interaction with the skin.

16. The "hypoallergenic" representation is a central component of Defendant's marketing strategy.

17. Consumers purchasing diapers exercise a high degree of care because diapers come into extended contact with infants' skin. A product marketed as hypoallergenic communicates that the manufacturer has formulated it to reduce the likelihood of irritation and that the materials used remain carefully controlled. This message also carries an implicit representation of consistency—parents expect that, if the manufacturer materially changes the diaper, such a change will be disclosed.

18. Reviews posted on Huggies' own website demonstrate that consumers began noticing a visible difference in the Product's internal lining, including the appearance of a new blue interior surface. The blue interior surface is depicted below, in a picture of a diaper actually purchased by Plaintiff.



19. Many consumers described using Huggies Little Movers for extended periods without any problem, only to observe irritation or redness associated with the new version. These reviewers also reported that the irritation resolved once the Product was discontinued and another diaper brand was used instead. The shift in consumer reports corresponds to the introduction of the revised Product.

20. The following is a small sample of the many reviews on Defendant's website which substantiate the fact that the Product was reformulated and that consumers are experiencing serious issues with the Product following the reformulation.

**do not buy**

anon748

a month ago

would leave a zero if i could. my daughter received chemical burns from these diapers. i took her to the dr after 2 days of using them and they said this is an increasing issue with these diapers. after 24hrs of using a different brand and medicated ointment her rash was almost cleared

★☆☆☆☆

## ALLERGIC REACTION

anonymous

3 months ago

New blue lining inside gave my son an allergic reaction. Have been using huggies since we left the hospital a year ago without issues. Will have to switch brands now

★☆☆☆☆

**Recall needed**

kh1654

2 months ago

We were die hard Huggies family and was all we would use since birth. My daughter has never had a diaper rash in her life. Within 12 hours of opening a new box with the blue lining she had a blistering chemical rash. Had to switch to Millie moon even though they don't fit nearly as comfortable. Hoping Huggies will see all of that and switch it back immediately. Until then will not be buying!

★☆☆☆☆

## New design lead to rashes for our baby

cb2025

2 months ago

Used Huggies for two months after the arrival of our son without any problems. We now have had to change to a different brand of diapers since Huggies changed their design and added the blue lining. He was receiving rashes on his diaper area and thighs. We tried many things not thinking it was the diaper but as soon as we changed to a different brand, the rash cleared. With the new design and manufacturer, we won't be going back to Huggies for the diapers.

⊗ No, I do not recommend this product.

★☆☆☆☆

**RECALL IMMEDIATELY! 2ND DEGREE CHEMICAL BURN ON MY BABY**

lashelle m

3 months ago

DO NOT PURCHASE THESE! CHEMICAL BURNS on my daughter in than 24 hours of use. The most severe is 2nd degree, over 2 inches long and blistered. She's never had a diaper rash. Tried these as active baby diaper. Quick google search says this is common reaction and may be due to new dye used. I will never purchase from Huggies again. I can't even believe they sell these knowing they are burning babies genitals. She is getting evaluated by her doctor and your company will be hearing from my attorney. How dare you knowingly and willingly produce and sell a product that burns innocent babies?! I don't care what costs you're cutting. Where is the humanity?

★☆☆☆☆

## Causes Horrible Rash. Buyer Beware

switchingbrands

4 months ago

We've been using these diapers for years, and suddenly the new version is giving my daughter a horrible rash/chemical burn. We are sad to ditch the Huggies brand, but we simply cannot support the company until a recall is enacted. Buyer beware!! Huggies: please please listen to your customers. Something has to be done to fix this problem.

⊗ No, I do not recommend this product.

★☆☆☆☆

## Do NOT Buy

mamabear13

4 months ago

We have been using Huggies for over a year with no issues or rashes. Since they started having the blue liner we have been battling what I originally thought was a diaper rash for over 2 weeks. Nothing worked to clear it up and daughter was in pain, up all night screaming. Started to see other reviews from parents with the same issue. Switched to Millie Moon diapers and the rash began to clear up immediately and was completely clear within 24 hours of switching. Huggies these need to be recalled. We will not be switching back, buy at your own risk.

★☆☆☆☆

**The redesign immediately caused a rash :(**

rcd1989

4 months ago

My little one is nearly 22mo and has been wearing Huggies Little Snugglers/Little Movers since birth. They recently changed their diapers, with the new liner being blue. His entire diaper area is now inflamed with a horrible rash. He had severe eczema from ~3-15mo, and this rash rivals what he had when we were making regular visits to the dermatologist. I'm extremely disappointed because I have two huge boxes that now I cannot use, and I have to go through the process of finding a new diaper.

No, I do not recommend this product.

★☆☆☆☆

**Please Recall these**

ashlynnm

4 months ago

RECALL NEEDED. We used to love Huggies. The new design is giving our son rashes/chemical burns. We have been Huggies lovers since he was newborn, now we have to find a new brand. They also leak so much more. PLEASE bring back the old design. Just wasted money on a big box.

21. Defendant responded to several of the earliest of these reviews. For example, in response to the review titled "Please Recall these" which appears directly above, Defendant replied as follows:

| Response from Huggies: | 4 months ago |
|---|---|
| huggies® We're sorry to hear about your experience and want to assure you that your child's health and well-being is very important to us. Please know that all of our products go through extensive evaluations to ensure irritation is unlikely to occur even on the most sensitive of skin and Huggies® Diapers cannot cause burns because they are made of materials that do not create any type of chemical reaction. Regardless, we know that irritation can happen for many reasons, and we'd like to find out more about what happened. Please reach out to us at 1-877-648-2484 (weekdays, 8 a.m. to 5 p.m. CST) when you have a chance so we can help further. Thank you and we hope to hear from you soon! | |

22. Thus, Defendant has for months had actual notice of these issues because they were posted on its own website, associated with the Product listing, and visible to any representative tasked with monitoring consumer feedback. These reviews appeared over a period of months, consistently describing similar experiences after the Product began displaying the new internal lining.

23. Despite this notice, Defendant made no change to its packaging or marketing and did not disclose the reformulation. As a result, consumers continued to purchase the Product under the belief that it remained the same diaper they had trusted previously. This deprived consumers of the ability to make an informed purchasing decision and caused them to pay more for the Product than it was worth.

24. By marketing the Product as hypoallergenic and failing to disclose a material change in its composition, Defendant engaged in a deceptive practice that misled reasonable consumers.

25. The inconsistency between the Product's represented qualities and its actual characteristics following the reformulation caused Plaintiff and the Class to suffer economic harm.

26. Plaintiff and the Class paid a premium for Product based on the representations and omissions detailed herein. Had she known the truth—that the Product tends to cause babies a

severe skin reaction—she would not have purchased the Product or would have paid significantly less.

27. Plaintiff and other consumers paid a price premium for Defendant's Product. That premium was unjustified and resulted in economic injury.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendant is a citizen of Delaware and Texas; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

29. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

30. Venue is proper because Plaintiff and many Class Members reside in the Northern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

31. Plaintiff Alyssa Burns is a natural person and a citizen of the State of New York. She resides in Willow, New York, within Ulster County and within the jurisdiction of this Court. Plaintiff purchased the Product on numerous occasions in the class period including most recently on Amazon.com on May 21, 2025. Plaintiff reasonably relied on representations on the Product packaging at the time of her purchase.

32. Similar to the experiences detailed in the product reviews reproduced above, Plaintiff's child developed an unusual and highly uncomfortable rash while wearing the Product.

33. Plaintiff would not have purchased the Product or would not have been willing to pay the same price for the Product has she known that the Product was not hypoallergenic, had been reformulated and/or tends to cause serious rashes and burns.

34. Defendant Kimberly-Clark Corporation is a Delaware Corporation with a principal place of business in Irving, Texas. Defendant manufactures and sells the Product.

35. Defendant's Product is sold in major retailers nationwide.

## CLASS ALLEGATIONS

36. Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

37. The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period.

38. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the state of New York at any time during the Class Period (the "New York Subclass").

39. The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

40. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

41. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New

York Subclass who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

42. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Product;

d. Whether Defendant's false and misleading statements and omissions concerning its Product were likely to deceive the public; and

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

43. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Product. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

44. Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has

retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

45. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

46. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Product.

47. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

48. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

50. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

51. There is no adequate remedy at law.

52. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers.

53. Defendant's improper consumer-oriented conduct— in advertising its Product with the false claim that they are "hypoallergenic" and omitting any mention of the fact that the Product were reformulated or tend to cause serious rashes and chemical burns—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Product and to use the Product when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

54. Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Product that were mislabeled. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

55. Defendant's advertising and Product's packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

56. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

57. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and

compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

58. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

60. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

61. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Product inasmuch as it misrepresents that the Product is "hypoallergenic" and omits any mention of the fact that the product was reformulated or that it tends to cause serious rashes and chemical burns.

62. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Product that were mislabeled,

unhealthy, and worth less than represented. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

63. Defendant's advertising, packaging, and Product's labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

64. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

66. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Product's packaging and labeling.

67. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

68. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages, restitution damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: November 25, 2025

**FURIA LAW, LLC**

By: Philip Furia
Philip J. Furia
880 Third Avenue, Fifth Floor
New York, New York 10022
Tel : 646-830-1915
furiap@furiafirm.com

*Counsel for Plaintiff and the Class*